UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 3:15-cv-519-JVB-MGG ) |
| EARL D. MILLER, 5 STAR COMMERCIAL, LLC, and 5 STAR CAPITAL FUND, LLC, | ) ) ) |
| Defendants, and | ) ) |
| MATTHEW D. GINGERICH, | ) ) |
| Relief Defendant. | ) |

**OPINION AND ORDER**

Plaintiff United States Securities and Exchange Commission moves for an entry of final judgment against Defendant Earl Miller, seeking a permanent injunction, disgorgement, prejudgment interest, and a civil penalty.[1] For the reasons below, this Court grants Plaintiff's motion for all forms of relief.

**A.   Overview of the Case**

Plaintiff alleged that Defendant committed securities fraud under 15 U.S.C. § 78j(b), 17 C.F.R. § 240.10b-5, and 15 U.S.C. § 77q(a), by raising money from investors through "material misrepresentations and omissions."[2] (DE 1 ¶ 9.) Initially, Defendant was represented by counsel, but his attorneys later moved to withdraw. (DE 44, 45.) Soon after, Defendant moved for

---

[1] This Opinion and Order concerns only Miller. All subsequent references to "Defendant" thus refer solely to Miller.
[2] Co-defendants 5 Star Commercial, LLC, and 5 Star Capital Fund, LLC, were among the investment vehicles Defendant used in this scheme. (DE 87 ¶ 1.)

1

appointment of counsel. (DE 47.) Meanwhile, Magistrate Judge Christopher A. Nuechterlein granted the motions to withdraw and ordered Defendant to file a status report advising whether he would seek counsel or proceed pro se.[3] (DE 46.) Defendant stated he would move forward even if he had to do so pro se. (DE 48.) Two weeks later, Judge Nuechterlein denied Defendant's motion for counsel because he "failed to establish that he is not competent to litigate this case on his own behalf," but noted that Defendant could "renew his motion . . . at any time during this litigation." (DE 52 at 2.)

Defendant then filed a second motion for counsel, arguing that he did not "trust [his] ability to make [legal] decisions on [his] own." (DE 54 at 4.) Judge Nuechterlein denied that motion as well, noting that a mere lack of confidence does not render one incompetent to represent oneself. (DE 55 at 2.) A week later, Defendant filed a third motion for counsel, which largely rehashed his prior arguments. (DE 56.) Next came multiple failures to obey discovery orders, each coupled with an assurance that Defendant was "willing to cooperate."[4] Plaintiff also filed an amended complaint (DE 87), which Defendant did not answer. Eventually, enough was enough, and Plaintiff filed a motion for a Rule 37(b) default judgment. (DE 95.) In his response, Defendant emphasized his lack of counsel, argued the merits of Plaintiff's complaint, and again assured this Court that he is "willing and able to do everything that is required of [him]." (DE 104.) Because Defendant neither addressed nor cured the discovery violations, this Court stated that it "will enter default judgment against [Defendant]," but ordered Plaintiff to file a brief to justify the relief it sought. (DE 110 at 2.) Defendant has since retained counsel. (DE 116.)

---

[3] Defendant's motion for counsel was not entered into the docket until shortly after that order.
[4] For example, Plaintiff filed a motion to compel Rule 26(a)(1) initial disclosures. (DE 64.) Defendant's response consisted of assurances of cooperation, but no indication that any cooperation would be forthcoming. (DE 66.)

**B.     Standard of Review**

When a defendant violates securities laws, a court can issue an order permanently enjoining him from violating those laws in the future. *SEC v. Holschuh*, 694 F.2d 130, 144 (7th Cir. 1982). Additionally, a court can award various forms of monetary relief, including disgorgement, prejudgment interest, and a civil penalty. *SEC v. Michel,* 521 F. Supp. 2d 795, 830–31 (N.D. Ill. 2007). Because each form of relief requires analyzing a different set of factors, this Court will discuss the respective standards of review when relevant.

**C.     Analysis**

Plaintiff seeks a permanent injunction, disgorgement, prejudgment interest, and a third-tier civil penalty. Defendant argues that the permanent injunction and civil penalty are unwarranted. Additionally, he seeks an evidentiary hearing to determine the proper amount of disgorgement. He does not explicitly address prejudgment interest.

**(1)     Defendant's Procedural Attacks Fall Short**

In his response, Defendant leaves unaddressed most of Plaintiff's substantive arguments. Instead, he launches a series of procedural attacks revolving around whether he contested the allegations in Plaintiff's complaints.[5] These attacks, however, are a day late and a dollar short.

(a)     *Defendant Cannot Overcome a Rule 37(b) Default by Virtue of His Original Answer*

---

[5] Defendant also attacks Plaintiff's brief, first claiming that Plaintiff failed to properly cite a certain case. (DE 115 at 1.) Suffice it to say, this Court had no trouble locating the case and understanding its relevance. He also faults Plaintiff for failing to include citations in one of its introductory paragraphs. (*Id*. at 2.) He neglects to mention that Plaintiff properly cited to the record in the brief's "DISCUSSION" section. (DE 2–10.) Simply put, these wholly collateral attacks amount to mere nitpicking and thus warrant no further analysis.

Defendant seems to be under the impression that this Court ordered a Rule 55(a) default for "fail[ing] to plead or otherwise defend": he spends two pages faulting Plaintiff for "neglect[ing] to note that [Defendant] denied the material allegations asserted in [Plaintiff's] original Complaint" and also insists that "only the new and amended allegations of the Amended Complaint were not denied." (DE 115 at 1.) However, this Court ordered a Rule 37(b) default judgment for Defendant's repeated failures to comply with discovery orders. (DE 110.) That Defendant answered Plaintiff's original complaint is of no moment because it does not cure the discovery violations. Thus, because the basis of the default judgment remains intact, Plaintiff's allegations must be treated as if they were admitted. *See United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989) ("As a general rule, a default judgment establishes, as a matter of law, that defendants are liable to plaintiff as to each cause of action alleged in the complaint.").

Additionally, Defendant notes that "[n]ot one assertion made by the SEC has ever been established at trial, and generally are completely unsupported by the evidence surrounding this case." (DE 115 at 2.) The Seventh Circuit swiftly rejected a similar argument made by defendants in default. *See Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983) ("Initially, defendants argue that the district court erred in entering the default judgment without proof of the allegations in the complaint. This claim of error need not detain us."). This Court will dispose of Defendant's argument with similar haste: "A default means that the factual allegations of the complaint, except those relating to the amount of damages, are taken as true and can no longer be contested." *Robinson v. Petyo*, 2009 U.S. Dist. LEXIS 123136, *16 (N.D. Ind. Dec. 8, 2009) (*citing e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 605 (7th Cir. 2007)).

(b)  *Defendant's Surreply Is Improper*

Defendant filed a surreply that purports to "provide an accurate accounting of the fact setting." (DE 118.) The surreply, however, is not properly before this Court. Local Rule 7-1(d) provides for the filing of responses and replies, but no surreply. Courts in this district generally allow a surreply only if it "raises or responds to some new issue or development in the law." *Hall v. Forest River, Inc.*, 2008 U.S. Dist. LEXIS 31564, *2 n.1 (N.D. Ind. Apr. 15, 2008). Here, Defendant's surreply simply argues the merits of Plaintiff's complaint—something that could have been done in an earlier filing.[6] Thus, this Court will not consider the surreply.

(c)  *Plaintiff's Complaint Is Sufficient*

Defendant also asserts that some of Plaintiff's arguments are unsupported by allegations in the complaint. (DE 115 at 2.) If true, this would defeat Plaintiff's motion, for a defective complaint cannot give rise to relief, even if the defendant defaulted. *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994) ("The entry of a default order does not . . . preclude a party from challenging the sufficiency of the complaint.").

Here, Plaintiff argues in its brief that Defendant "stole over $1 million of investors' funds." (DE 114 at 3.) Defendant asserts that Plaintiff's complaint failed to allege this. (DE 115 at 2.) Specifically, he claims that "no underlying allegations have been made, nor evidence identified to support such a claim, to even suggest that [Defendant] maintains possession or control over any of the proceeds from the investments that were made." (*Id.* at 2–3.) This argument misinterprets Plaintiff's allegation. The "stealing" refers to allegations that Defendant

---

[6] In any event, the surreply is merely an unverified collection of factual allegations, unsupported by affidavits or citations to the record, so it is of no evidentiary value. *Cf. United States v. Adriatico-Fernandez*, 498 Fed. Appx. 596, 599 (7th Cir. 2012) ("A lawyer's unsupported statements are not evidence.").

5

fraudulently collected investments to pay himself and pay off a personal debt. (DE 87 ¶¶ 37–39.) Defendant never invested the money, so there are no proceeds over which to maintain possession or control. Moreover, Plaintiff properly alleged that Defendant controlled that money. (*See e.g.* DE 87 ¶ 42) ("In one instance, [Defendant] funneled the monies through his personal account first in an attempt to hide that he was stealing [investment] assets to pay his personal debt.") And since this is Defendant's only insufficiency argument, he has given this Court no reason to find Plaintiff's complaint defective.

**(2)      A Permanent Injunction Is Warranted**

Plaintiff requests an order permanently enjoining Defendant from violating 15 U.S.C. § 78j(b), 17 C.F.R. § 240.10b-5, and 15 U.S.C. § 77q(a) (the securities-fraud statutes Plaintiff alleges Defendant violated). The authority to issue such injunctions comes from 15 U.S.C. §§ 77t(b), 78u(d), and 78u(e).

To succeed, Plaintiff must establish that (1) Defendant violated these statutes, and (2) "there is a reasonable likelihood of future violations." *Holschuh*, 694 F.2d at 144.[7] The first element is established by virtue of Defendant's default. *Di Mucci*, 879 F.2d at 1497. As for the "reasonable likelihood" element, the Seventh Circuit looks at six main factors: (1) whether the defendant caused great harm; (2) whether he acted willfully (aka "scienter"); (3) whether the violation was an isolated incident; (4) whether the defendant is likely to reoffend; (5) whether the defendant recognized the wrongfulness of his conduct; and (6) whether the defendant made sincere assurances that he will not reoffend. *Holschuh*, 694 F.2d at 144.

---

[7] Defendant attempts to distinguish *Holschuh* by noting that the case "was decided at trial, and not upon a default." (DE 115 at 2.) The difference, however, is immaterial. *See SEC v. Abernathy*, 2012 U.S. Dist. LEXIS 186782, *6 (W.D. Mich. Nov. 30, 2012) ("In actions brought by the Commission, courts have issued permanent injunctions based on a finding of past violations established through a default judgment.") (collecting cases).

Here, the factors weigh heavily in favor of granting the injunction. First, Defendant raised over $4 million "through fraudulent offering materials." (DE 87 ¶ 10.) For example, he invested much of this money in companies that sell "green products," despite promising to invest the money in real estate. (*Id*. ¶ 46.) On that note, he invested roughly $1.1 million in a "green products" company that had no patents on any such products, yet he claimed the company did own the patents. (*Id*. ¶¶ 62, 67.) Some of the money was not even invested. He used around $365,000 to pay himself a salary—even though he explicitly promised not to do so—and another roughly $900,000 to pay off a personal debt. (*Id*. ¶¶ 38, 41.) His scheme covered "at least 70 investors" spread across "at least eight states." (*Id*. ¶¶ 27–28.) Several of these investors were unsophisticated individuals who emptied their life savings into Defendant's "investment" vehicles. (*Id*. ¶ 27.) In fact, he exploited his Amish heritage to target members of the Amish community. (*Id*. ¶ 26.) To sum it up, Defendant ran a multi-million-dollar interstate scheme to defraud vulnerable individuals. This certainly constitutes great harm.

Second, Defendant acted willfully. Many of his fraudulent statements were made in the form of a "Private Placement Memorandum." (DE 87 ¶ 34.) As the sole manager and owner of the company that issued the memorandum, Defendant would have "reviewed and approved the contents of" it. (*Id*. ¶ 35.) Likewise, Defendant directed the fraudulent investments. To give just one example, Defendant, in an effort to pay off his personal debt while evading detection, dumped some of the money into his personal account to disguise the true source of the payment. (*Id*. ¶ 42.) This adequately demonstrates willfulness.

Third, this is not an isolated incident. Defendant's scheme spanned multiple years and involved creating two separate companies. (DE 87 ¶ 25–27.) Nor is this his first run-in with securities officers. While Defendant was raising money for his fraudulent investments, he "was

7

under investigation by the State of Indiana Securities Division for offering and selling unregistered securities," the end result being a $5,000 civil fine. (*Id.* ¶ 52.) Defendant insists that this investigation is not as damning as Plaintiff lets on. (DE 115 at 3.) Yet, because Defendant offered no supporting evidence, this Court will defer to Plaintiff's allegation, which is admitted as a matter of law.

Fourth, Defendant is in a position to reoffend. Specifically, Defendant still maintains his Amish heritage and Amish connections, which is what allowed Defendant's scheme to be so successful in the first place. (*See* DE 87 ¶ 26.)

Fifth, Defendant has not recognized the wrongfulness of his conduct. In fact, he continues to protest his innocence. In his response to Plaintiff's motion for default judgment, Defendant emphatically asserted that he "absolutely did NOT target the Amish people and certainly did NOT intend to defraud anybody." (DE 104.) He also described his acts of fraud as a "problem" that was not discovered until July 2015. (DE 54 at 4.) He then stated that he hired a company to fix the "problem." (*Id.*) Nowhere does he acknowledge that his conduct, which began in 2014, was the problem. This weighs in favor of a permanent injunction.

Lastly, Defendant has made no assurances that he will play by the rules. Instead, he once again insists that he "stands prepared to assist the SEC." (DE 115 at 4.) He has made this promise in at least six prior filings. (*See e.g.* DE 54, 56, 58, 66, 84, 104.) And this latest assurance, like the rest, is unaccompanied by any evidence of actual cooperation. Moreover, his only colorable act of assistance—agreeing to attend a deposition—was an illusion: Defendant "intend[ed] to be pleading the 5th for all the questions."[8] (DE 96 at 13.) This does nothing to assure this Court that Defendant will stop violating securities laws.

---

[8] Because this is a civil case, Defendant's choice to "plead the Fifth" can be held against him. *SEC v. Lyttle*, 538 F.3d 601, 604 (7th Cir. 2008).

In conclusion, all of the relevant factors weigh in favor of a permanent injunction.

### (3) Disgorgement Is Warranted

Next, Plaintiff requests that this Court order Defendant to disgorge $4,141,133.60 in illicit profits. Disgorgement serves "to prevent a defendant from being unjustly enriched by his fraud, to divest wrongdoers of their ill-gotten gains, and to deter future violations." *SEC v. Benger*, 2015 U.S. Dist. LEXIS 151412, *9 (N.D. Ill. Nov. 9, 2015). The amount disgorged "need only be a reasonable approximation of profits causally connected to the violation." *SEC v. First City Fin. Corp.*, 890 F.2d 1215, 1231 (D.C. Cir. 1989). Plaintiff can establish reasonable approximation through the declaration of a staff accountant. *See e.g. SEC v. Cook*, 2015 U.S. Dist. LEXIS 111513, *85 (S.D. Ind. Aug. 24, 2015). The burden then shifts to Defendant to "demonstrate that the disgorgement figure [is] not a reasonable approximation." *First City Fin. Corp.*, 890 F.2d at 1232. Defendant bears the risk of any uncertainty in the calculations. *Id*.

Here, Plaintiff provided the declaration of Delia L. Helpingstine, a staff accountant with almost thirty years' experience. (DE 114-1 ¶ 1.) She reviewed bank records from over 45 bank accounts, as well as accounting documents prepared for Defendant's investment vehicles. (*Id*. at ¶ 3.) In total, she reviewed roughly 15,000 pages of documents. (*Id*.) Through this review, she determined how much money each investor paid to Defendant and how much Defendant paid back as interest. (*Id.* at ¶ 4.) According to the numbers, Defendant took in $4,141,133.60 more than he paid out. (*Id.* at ¶ 5.) This Court finds that Ms. Helpingstine's calculations are a reasonable approximation of profits causally connected to Defendant's violations.

Defendant's sole attack on the numbers involves investments in companies owned by Julius Toth and Robert Foraker. He argues that these investments were "not part of the offerings

for which [Plaintiff] has taken the default." (DE 115 at 4.) In reality, Plaintiff spent almost three pages in its complaint discussing these particular investments and why they constitute securities fraud. (*See* DE 87 ¶¶ 60–70.) He also claims Plaintiff double-counted these investments. (DE 115 at 4.) Yet, he offers no evidence in support of this allegation. Lastly, Defendant requests a hearing to determine the disgorgement amount. No hearing is necessary where, as here, the SEC provides a reasonable approximation that the defendant fails to call into question. *Cf. SEC v. Alanar, Inc.*, 2008 U.S. Dist. LEXIS 37241, *16–18 (S.D. Ind. May 6, 2008) (adopting the SEC's approximation because it was reasonable and because the defendants did not "present[] any evidence or testimony to contradict the SEC's calculations"). This Court will thus order the requested disgorgement.

**(4)     Prejudgment Interest Is Warranted**

Plaintiff also requests an award of prejudgment interest for the amount disgorged. Prejudgment interest "ensure[s] that the wrongdoer does not make any illicit profits," *Michel*, 521 F. Supp. 2d at 831, and "prevents a defendant from obtaining the benefit of what amounts to an interest free loan procured as a result of illegal activity." *SEC v. Moran*, 944 F. Supp. 286, 295 (S.D.N.Y. 1996). Some courts treat prejudgment interest as an extension of disgorgement. *See e.g. Michel*, 521 F. Supp. 2d at 831 ("Prejudgment interest is appropriate on disgorgement amounts."). Other courts require a finding that the defendant acted willfully. *Cf. SEC v. Secure Capital Funding*, 2014 U.S. Dist. LEXIS 60243, *6 (D.N.J. Apr. 29, 2014) ("Proof of a defendant's scienter justifies the award of prejudgment interest."). Some courts look to factors such as "considerations of fairness and the relative equities of the award," as well as "such other general principles as are deemed relevant by the court. *SEC v. First Jersey Sec., Inc.,* 101 F.3d

1450, 1476 (2d Cir. 1996). Any way you slice it, however, prejudgment interest is justified in this case for the reasons discussed above.

To calculate prejudgment interest, courts use the IRS underpayment rate and calculate the interest up to the entry of judgment.[9] *First Jersey Sec., Inc.,* 101 F.3d at 1476–77. Here, Plaintiff provided tables that calculated the interest from August 1, 2015 to September 30, 2017. (DE 114-1 at 9–10.) Using these tables as a baseline, this Court calculated the additional interest from October 1, 2017 to the date of this Opinion and Order. In the end, Defendant owes $799,597.20 in prejudgment interest.

**(5)    A Third-Tier Civil Penalty Is Warranted**

Lastly, Plaintiff requests that this Court impose a third-tier civil penalty of $320,000 against Defendant. The relevant statutes, 15 U.S.C. §§ 77t(d), 78(u)(d), allow district courts to impose civil penalties. The most severe penalty—a "third-tier" penalty—requires, at a minimum, that the violation: (1) "involve[] fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement;" and (2) "directly or indirectly result[] in substantial losses or create[] a significant risk of substantial losses to other persons." 15 U.S.C. §§ 77t(d)(2)(C), 78(u)(d)(3)(B)(iii). These requirements have been met by virtue of Defendant's default. Whether to actually impose a penalty depends on "the seriousness of the violations, the defendant's intent, whether the violations were isolated or recurring, whether the defendant has admitted wrongdoing, the losses or risks of losses caused by the conduct, and any cooperation the defendant has provided to enforcement authorities." *SEC v. Church Extension of the Church of*

---

[9] For the underpayment rates, *see IRC 6621 Table of Underpayment Rates*, U.S. Dept. of Labor, https://www.dol.gov/agencies/ebsa/employers-and-advisers/plan-administration-and-compliance/correction-programs/vfcp/table-of-underpayment-rates (last visited Sept. 12, 2019).

*God*, 429 F. Supp. 2d 1045, 1050 (S.D. Ind. 2005).

Here, the factors, which are similar to the injunction factors, all weigh in favor of imposing a penalty for the reasons discussed above. Defendant contends that the penalty would "serve[] no purpose as the Defendant is virtually indigent." (DE 115 at 4.) However, mere inability to pay cannot overcome the many factors in favor of imposing the penalty. *Cf. SEC v. Warren,* 534 F.3d 1368, 1370 (11th Cir. 2008) ("[The defendant's] ability to pay does not merit significant weight in comparison to the other equities."). Defendant also argues that the penalty is unwarranted because of "the close proximity of the amount of losses calculated by [Plaintiff] to the amount required before such penalties can be awarded" (DE 115 at 4), but offers no case law in support of this proposition. Suffice it to say, this Court is satisfied that losses of over $4,000,000 are substantial enough to justify Plaintiff's request. *Cf. SEC v. Aura Fin. Servs.,* 2010 U.S. Dist. LEXIS 89572, *8, *12 (S.D. Fla. July 14, 2010) (finding losses of $3,336,735 substantial and recommending third-tier civil penalty of $650,000), *adopted by* 2010 U.S. Dist. LEXIS 89571 (S.D. Fla., Aug. 27, 2010). In short, the equities support imposing the penalty.

**D.     Conclusion**

Defendant's unsupported allegations and procedural attacks cannot carry the day against his Rule 37(b) default and Plaintiff's evidence. Accordingly, Plaintiff's motion is GRANTED.

It is hereby ordered:

(1) Defendant is permanently restrained and enjoined from violating, directly or indirectly, 15 U.S.C. § 78j(b), 17 C.F.R. § 240.10b-5, and 15 U.S.C. § 77q(a). Pursuant to Fed. R. Civ. P. 65(d)(2), this paragraph also binds the following who receive actual notice of this Opinion and Order by personal service or otherwise: (a) Defendant's officers, agents, servants,

employees, and attorneys; and (b) other persons in active concert or participation with Defendant or with anyone described in (a).

(2) Defendant shall pay disgorgement in the amount of $4,141,133.60, prejudgment interest thereon in the amount of $799,597.20, and a third-tier civil penalty in the amount of $320,000. Defendant shall satisfy this obligation by paying $5,260,730.80 to Plaintiff within 14 days after entry of this Opinion and Order.

Defendant may transmit payment electronically to Plaintiff, who will provide detailed ACH transfer/Fedwire instructions upon request. Payment may also be made directly from a bank account via Pay.gov through Plaintiff's website at http://www.sec.gov/about/offices/ofm.htm. Defendant may also pay by certified check, bank cashier's check, or United States postal money order payable to the Securities and Exchange Commission, which shall be delivered or mailed to:

> Enterprise Services Center
> Accounts Receivable Branch
> 6500 South MacArthur Boulevard
> Oklahoma City, OK 73169

and shall be accompanied by a letter identifying the case title, civil action number, and name of this Court; Earl Miller as a defendant in this action; and specifying that payment is made pursuant to this Opinion and Order.

Defendant shall simultaneously transmit photocopies of evidence of payment and case identifying information to Plaintiff's counsel in this action. Plaintiff shall send the funds paid pursuant to this Opinion and Order to the United States Treasury.

Plaintiff may enforce the Court's judgment for monetary relief by moving for civil contempt (and/or through other collection procedures authorized by law) at any time after 14 days following entry of this Opinion and Order. Defendant shall pay postjudgment interest on

any delinquent amounts pursuant to 28 U.S.C. § 1961.

(3) This Court shall retain jurisdiction of this matter for the purposes of enforcing the terms of this Opinion and Order.

(4) There being no just reason for delay, pursuant to Fed. R. Civ. P. 54(b), the Clerk is ordered to enter this Opinion and Order forthwith and without further notice.

SO ORDERED on September 12, 2019.

                                          S/ Joseph S. Van Bokkelen
                                          JOSEPH S. VAN BOKKELEN
                                          UNITED STATES DISTRICT JUDGE